GEORGE MOORE *v.* COMMONWEALTH.

**Criminal Law—Confession as Evidence.**

> When a confession is made through the influence of hope or fear applied by a third person to the prisoner's mind, it is not admissible as evidence against him. Where a confession is obtained under inducements offered by those having the prisoner in custody it is inadmissible as evidence.

APPEAL FROM WOODFORD CIRCUIT COURT.

November 22, 1877.

OPINION BY JUDGE PRYOR:

The confessions made by the accused were clearly incompetent and should have been excluded from the jury.

Gentis, who was a constable of the county and one of the guard, having the appellant in custody, charged with the offense of which the accused was found guilty, says that nearly all of the guard made efforts to induce appellant to confess, and as a means of extracting from the appellant what he knew, said to him "that Jake's testimony would hang him, and he had as well tell all he knew." The "Jake" alluded to by the witness was Jake Mosby, who had been arrested upon the same charge or for committing the same offense; and the witness says that while he made no threats or held out any hope to the accused in order to induce the confession, his object was to produce a feeling of hostility between the two, with the expectation that the one would disclose facts as to the other. The accused made no confession at the time alluded to by the witness, but shortly after Carter, another one of the guard, was asked by the accused "what he thought of the case," and Carter replied "that he thought it was a bad one, and if he was in his place he would come out and tell all about it; it would do him no harm and might do him good."

There is no evidence in the case assigning any motive on the part of the accused inducing him to murder the deceased, or any statement showing that accused was near the premises or place where the deceased was killed, either at the time of the murder or previous thereto. The only evidence of guilt consists in the confessions proven. The rule is that if the confession is made through the influence of hope or fear applied by a third person to the prisoner's mind it is inadmissible. The judge to whom this question is addressed must take into consideration the circumstances under which the confession was made, as well as the situation and character of the accused.

Greenleaf says: "that language used by others sufficient to overcome the mind of one may have no effect upon that of another; therefore the necessity, before admitting such testimony, of considering the condition of the accused, his capacity for understanding not only his own interests, but the motives of those who are using appliances in order to obtain a confession." In this case the accused is a negro, was a slave prior to the war, and possessed of no more intellect, doubtless, than is common to his race. There were several persons questioning him and all using their endeavors to obtain a confession, with a view of having the guilty party punished. The mind of the accused was easily influenced by those having him in custody, and when told there was evidence sufficient to hang him, and the name of the witness was given, and he was told that he had better confess, that it could be no worse for him, it was a suggestion that contained in itself, when applied to an ignorant negro, both the flattery of hope and the torture of fear, and a confession made under such circumstances was incompetent. While it is agreed that no confession was made to the party offering the inducement, the proof shows that the suggestion made by the constable for the purpose of obtaining the confession was on the mind of the accused, as in a short time after he inquired of another one of the guard, Carter, what he thought of his case, and was told that it was a bad one and he had better confess, that it might do him good. Here the motive of hope was again applied to the mind of the accused, and the confession made upon which the verdict of guilty is alone based.

Besides, these confessions were obtained under inducements offered by those having the prisoner in custody, and in such cases it is a well-settled rule of law that the confession made must be excluded. Greenleaf in illustration of this rule cites the case where the accused was told by the constable having him in charge, "it is no use for you to deny it, for there is the man and boy who saw you do it." The confession was held inadmissible. There is, of course, much difficulty often on the part of the court in determining what constitutes such a threat or promise as will or ought to exclude a confession. Some of the authorities going farther in admitting such testimony than the doctrine found in the elementary books, viz: "The real question is, whether there has been any threat or promise of such a nature that the person would be likely to tell an untruth from fear of the threat or hope of profit from the promise." Applying even this rule in the present case, as there is no testimony direct or circumstantial corroborating the confession, the mind is left in doubt

as to the truth of the confession made, and particularly when another party charged with the commission of the crime is shown to have been at the premises of the deceased but a few minutes prior to the fatal shot.

Where confessions have been obtained by reason of threats or promises made by those having the custody of the prisoners or the authority over them at the time the confession is made, the safer rule is to exclude them from the jury. "The rule will necessarily fail, sometimes, of meeting the truth; but as it is thought to succeed in a large majority of the instances it is only adopted as a rule of law applicable to them all." Greenleaf on Evidence, p. 267.

The judgment is *reversed* and cause remanded with directions to award a new trial and for further proceedings consistent with this opinion.

*W. P. Thorne, for appellant.  Moss, for appellee.*